72 N.J. Super. 572 (1962)
179 A.2d 49
JOSEPH SPIOTTA, PLAINTIFF-RESPONDENT,
v.
WILLIAM H. WILSON, INC., A CORPORATION OF NEW JERSEY ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1962.
Decided March 8, 1962.
*575 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Herbert C. Klein argued the cause for appellants.
Mr. Benjamin Wasserman argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants appeal from a Chancery Division summary judgment, as amended, in favor of plaintiff in his foreclosure action.
On July 22, 1957 plaintiff loaned $30,000 to defendant William H. Wilson, Inc., hereinafter referred to as the company. He asked for, and the company agreed to pay, a premium (so denoted in plaintiff's affidavit), of $13,000, thereby creating an indebtedness of $43,000. To evidence this obligation the company on that date executed and delivered to plaintiff 43 negotiable promissory notes of $1,000 each and bearing interest at 6%. The notes were payable at monthly intervals, beginning August 22, 1957, so that the last note fell due on February 22, 1961. The notes were endorsed by defendants William H. Wilson and Adriana, his wife. As security for the loan, the company executed and delivered to plaintiff a real estate mortgage containing the usual 30-day default clause. The mortgaged premises consisted of three contiguous improved lots on Route 46 in Totowa, N.J. There was a gasoline station on one lot, a three-family house on the second, and a restaurant and bar on the third. We note that one tract was already encumbered by a first mortgage in the amount of $13,125, and another tract by a first mortgage in the amount of $24,596. We are informed that as additional security plaintiff received a chattel mortgage on all the personal property in the restaurant, owned by Mayfair, Inc., of which Wilson was an officer, as well as all the capital stock of that company. This triple security is eloquent evidence of defendant's desperate need of funds and almost complete lack of bargaining position.
*576 On July 27, 1957 the Wilson company conveyed the mortgaged premises to defendant Howin Corporation, of which Wilson was the president. Howin paid the $1,000 notes as they matured, together with interest, until the note of January 22, 1959 fell due. It apparently had some difficulty in paying that note. Howin gave plaintiff three checks of $400 each, respectively dated February 22, March 22 and April 22, 1959, to take care of the note. The first check was paid; the remaining two were returned by the bank marked "Insufficient Funds" and were never paid.
Howin paid the three notes that fell due in February, March and April, but failed to pay those due in May and June 1959. Plaintiff thereupon elected to call the entire balance due, and on July 2, 1959 instituted the present action to foreclose the real estate mortgage. The complaint stated that there was then due on the unpaid notes and mortgage the principal sum of $22,800 plus interest of $2,622 to June 22, 1959.
In their answer defendants admitted execution of the 43 notes but denied they were indebted to plaintiff in the amount claimed. By way of separate defense they alleged that the loan transaction contemplated a bonus to plaintiff to be apportioned over the life of the notes; acceleration in the payment of the notes would make the $13,000 bonus "tantamount to a penalty," and therefore that portion of the loan which became a penalty by virtue of the acceleration was not due and owing to plaintiff and should be credited against the amount claimed to be due. Further, defendants characterized the bonus as exorbitant and unconscionable, and claimed they were entitled to a credit against the portion said to be due and owing, thereby reinstating the loan and vacating the alleged default.
On March 1, 1961 plaintiff, pursuant to an order permitting him to do so, filed a supplemental complaint setting out that additional notes, due on the 22nd day of each month commencing with July 22, 1959, and up to and *577 including January 22, 1961, had not been paid. Defendants answered, setting up the same defenses as before.
Plaintiff then moved for summary judgment, the motion being supported by an affidavit of indebtedness in which plaintiff stated that the balance of the principal sum due was $23,800, represented by 23 notes and two checks of $400 each, together with interest thereon. This allegation was corrected in an affidavit filed soon after by plaintiff in which he indicated that $22,800 was due, represented by 22 notes and the two checks, plus interest of $5,156.80, or a total of $27,956.80. In an answering affidavit, defendant Wilson alleged that
"4. The January 22, 1959, payment was paid unto the plaintiff by three separate checks, which the plaintiff accepted pursuant to an arrangement made between the plaintiff and the defendant corporation."
He pointed out that although plaintiff demanded the sum of $25,422 in his original complaint, he had already received $46,422 in all, including $21,000 on account of principal, the $13,000 bonus, and interest at 6% from July 22, 1957, "which sum is unconscionable, and if said demand is permitted, the amount in excess of Thirty Thousand ($30,000.00) Dollars actually loaned, would be tantamount to a penalty." Based upon payments made, Wilson calculated the interest to the date of plaintiff's formal demand by the filing of a complaint, at 84%.
The Chancery Division judge entered summary judgment fixing the sum due for principal and interest at $27,956.80, as of May 18, 1961, the amount demanded by plaintiff in his corrected affidavit of indebtedness. The enforcement of the judgment was stayed pending the outcome of this appeal.
Obviously, N.J.S.A. 31:1-6 prohibits a corporate debtor from setting up the defense of usury. And it is not represented or argued that William H. Wilson, Inc. was a corporate shell used to cloak a loan which was actually being made to an individual borrower, in order to circumvent our usury law, N.J.S.A. 31:1-1. See In re Greenberg, 21 *578 N.J. 213, 220 (1956); Gelber v. Kugel's Tavern, Inc., 10 N.J. 191, 196 (1952).
Defendant company's argument is that when an unconscionably high interest rate is charged a corporation after and because of a default which brings on an acceleration of payments, a court of equity will hold such interest rate penal, and therefore unenforceable. By way of extreme example, defendant assumes a situation where the default occurred upon the maturity of the first note. Charges on the actual loan of $30,000 for a period of only two months would have included the $13,000 bonus, plus interest at 6%. Defendant company would have to pay interest of several hundred percent.
The $13,000 the company agreed to pay plaintiff, whether called a bonus or a premium, was a definite sum paid in addition to interest, in advance. This sum did not represent a charge for some service provided by plaintiff, or finance charges. Cf. Pacific Discount Co., Inc. v. Powell, 70 N.J. Super. 156 (App. Div. 1961). Stripping away the label of premium or bonus, the $13,000 can only be considered a sum exacted from the company for the use of plaintiff's money, i.e., interest. Bowen v. Mount Vernon Sav. Bank, 105 F.2d 796, 797 (D.C. Cir. 1939).
Had the loan run its full course, the effective rate of interest charged would be calculated as follows: the average amount loaned over the 43-month-period was $15,000, for which plaintiff charged $13,000 interest. This amounts to 86.666% over the life of the loan, or 24.18% per year. Adding the 6% per year on the face of the notes produces a rate of 30.18% per year.
We leave to one side, for the moment, the factual issue concerning the amount actually paid before default. (This centers upon whether the debtor company paid 21 notes in full, or only 20 notes and $400 on the January 22, 1959 note.) Assuming the correctness of defendants' claim that $21,000 was paid, the average amount loaned over a period of 21 months prior to plaintiff's claiming a default and *579 filing his complaint was $22,674.46. This is arrived at by reducing the $30,000 loaned by 1/43rd ($697.67) for each of the 21 months, or total payments of $14,651.07, leaving a balance of $15,348.93 owing. Averaging this amount and the $30,000 produces our figure of $22,674.46. For this loan plaintiff, in effect, seeks to charge the company, after default, the full $13,000 plus 6% interest. The $13,000 charged for an average loan of $22,674.46 results in 57.33% interest for 21 months, or an annual rate of 32.76%. This, plus the 6% regularly charged, amounts to 38.76%, as compared with the effective interest rate of 30.18% before default.
In Feller v. Architects Display Buildings, Inc., 54 N.J. Super. 205 (App. Div. 1959), the interest rate before maturity was 15.87%, and after maturity 32.87%. We held that this was clearly unconscionable and unenforceable as a penalty. Although, unlike in Feller, the present mortgage did not call for an increased rate of interest after default, we look behind the formal terms of the loan to what actually happened as a result of plaintiff's declaring a default and instituting this foreclosure action. The interest rate advanced over eight percentage points the moment default was declared. We find this unconscionable and unenforceable. Cf. In re Tastyeast, Inc., 126 F.2d 879 (3 Cir. 1942), certiorari denied Modern Factors Co. v. Tastyeast, 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942), based on New Jersey law, where the original loan rate of 21% increased to 30% on default; In re Liberty Doll Co., 242 F. 695 (D.S.D.N.Y. 1917); 3 Williston on Contracts (rev. ed. 1936), § 781, p. 2196, and 5 ibid., § 1416, p. 3945, 6 ibid., § 1696, p. 4803; Annotations, 84 A.L.R. 1283 (1933) and 100 A.L.R. 1431 (1936), "Usury as affected by acceleration clauses."
Plaintiff has resorted to a court of equity to enforce his security. He has thereby exposed himself to the operation of equitable principles and must submit to an equitable resolution.
*580 The $13,000 plaintiff charged defendant company as advance interest was for the use of his $30,000 (as diminished by 1/43rd with each passing month) over the full period of 43 months. If plaintiff earned anything for risking his capital, he earned it for only 23 months  that is, from July 22, 1959 until he declared a default. He is entitled to no more than 23/43rds of the $13,000 premium he exacted. The company should have been allowed the remaining 20/43rds of the premium, or $6,046.50, against the balance claimed to be due on the $43,000 mortgage.
There remains for consideration defendant company's claim that it had paid the January 22, 1959 note of $1,000 by giving plaintiff three checks "pursuant to an arrangement" with him, as stated in paragraph 4 of defendant Wilson's answering affidavit (quoted above) filed in opposition to plaintiff's motion for summary judgment. Plaintiff, in his affidavit in support of the motion, stated that the Howin Corporation had paid 17 of the notes up to and including December 22, 1958; that in lieu of the payment due January 22, 1959, defendant had delivered three checks, the first of which fell due on February 22, 1959 and was paid, and that the other two checks, for $400 each and payable March 22 and April 22, 1959, were not paid but were returned by the bank marked "Insufficient Funds." His affidavit goes on to say that Howin paid the notes which fell due during February, March and April 1959, thus completing payments of 20 notes. The notes falling due in subsequent months were not paid, so that there was $22,000 owing for principal on 22 notes, together with the $800 balance on the January 1959 note, plus interest.
Defendant company's affidavit did not attempt to spell out the arrangement between it and plaintiff. Its brief states that the arrangement was that the checks were to be accepted as absolute payment. The common law rule is that a check or promissory note, either of the debtor or a third person, received for a debt, "is not payment if not itself paid, except in cases where it is positively agreed to *581 be received as payment." State v. U.S. Steel Corp., 12 N.J. 38, 45 (1953). Plaintiff had established a prima facie right to summary judgment. It was defendants' burden to exclude all reasonable doubt as to the existence of any genuine issue of material fact. R.R. 4:58-3 emphasizes this in its requirement that the absence of a genuine issue as to any material fact challenged must be "palpable." As was said in the oft-cited case of Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954), all inferences of doubt are drawn against the movant in favor of the opponent of a motion for summary judgment. The papers supporting the motion are closely scrutinized, and opposing papers indulgently treated.
Where there is a prima facie right to summary judgment, the party opposing the motion must demonstrate by competent proof that a genuine issue of material fact exists. It is incumbent upon him to make an affirmative demonstration, where the means are at hand to do so, that the facts are not as the movant alleges. Heljon Management Corp. v. Di Leo, 55 N.J. Super. 306, 312-313 (App. Div. 1959). This is particularly true where such proof is within the opposing party's knowledge or control. He may not hold back his evidence, if any, until the trial.
If plaintiff's motion for summary judgment was to be countered successfully, it was for the defense to establish that he agreed to take the three $400 checks in absolute payment and discharge of the January 22, 1959 note. The mere assertion of an "arrangement" was insufficient to deny plaintiff recovery on this part of the debt.
The judgment is reversed and the matter remanded to the Chancery Division for the entry of a foreclosure judgment which will reflect the indicated credit of $6,046.50, representing the unearned 20/43rds of the $13,000 premium. Costs to defendants.