742 A.2d 986 (1999)
327 N.J. Super. 129
BRAE ASSET FUND, L.P., Plaintiff-Respondent,
v.
Philip A. NEWMAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1999.
Decided December 30, 1999.
*987 Christopher E. Hartmann, Roseland, for defendant-appellant (Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C., attorneys; Mr. Hartmann, on the brief).
David H. Stein, Newark, for plaintiff respondent (Duane, Morris & Heckscher, attorneys; Mr. Stein, on the brief).
Before Judges LANDAU, KIMMELMAN and ARNOLD.
The opinion of the court was delivered by KIMMELMAN, J.A.D.
Defendant Philip A. Newman appeals from a summary judgment order entered June 24, 1998, adjudicating his liability on two guaranty agreements, in the amounts of $1,000,000 and $47,238.49 respectively, for a total of $1,047,238.49. On appeal defendant contends that, notwithstanding the unconditional and absolute wording of the guaranties which he executed, his defenses of willful misconduct on the part of the Bank (plaintiff's predecessor by assignment), and the Bank's impairment of collateral, created issues of fact which should have precluded the entry of summary judgment. We disagree and affirm.
On June 29, 1992, Venet Advertising/NJ, Inc. (hereinafter Venet/NJ) borrowed $2,000,000 from Citizens First National Bank of New Jersey (heretofore and hereinafter Bank) and executed a promissory note in that amount. On the same day, in order to induce the Bank to make loans to Venet/NJ, defendant executed a Guaranty Of Payment in which his maximum liability to the Bank under that loan was limited to $1,000,000.
A related company, Venet Advertising, Inc. (hereinafter Venet) concurrently borrowed $475,000 from the Bank and executed a promissory note in that amount. It too was guaranteed by defendant who executed a second Guaranty Of Payment that also limited his maximum liability under that loan to $1,000,000.
After default by Venet/NJ and Venet (referred to jointly hereinafter as the Borrowers) this action was commenced against defendant on February 7, 1997. Defendant filed a pro se answer to plaintiff's complaint on or about March 26, 1997. On April 9, 1997, and again on June 17, 1997, the clerk of the court notified the parties that the case had been assigned to the "Expedited Track." Discovery was limited to 100 days and was scheduled to end on July 19, 1997.
On or about April 16, 1998, nine months after the period ordered for discovery expired, plaintiff filed a motion for summary judgment returnable on May 15, 1998. At defendant's request, the return date of the motion was rescheduled for June 12, 1998. On or about June 4, 1998, a law firm representing defendant entered an appearance on his behalf and shortly thereafter moved on short notice to extend the time for discovery. On June 12, 1998, approximately 300 days after the scheduled completion date for the expedited discovery, the court denied defendant's belated request to extend discovery. See R. 4:24-1 (requiring, even for cases not on the "Expedited Track," that discovery be completed within 150 days of the service of the complaint).
In his certification opposing plaintiff's motion for summary judgment, defendant asserted that in late 1992 the Bank wrongfully declared Borrowers' promissory notes to be in default. Defendant also averred that the Bank advised the Borrowers' customers to pay the receivables due directly to the Bank.
*988 Borrowers instituted an action to restrain the Bank from interfering with the Borrowers' rights to collect receivables from customers. On December 23, 1992, the Chancery Division issued a preliminary injunction restraining the Bank from, among other things, interfering with Borrowers' client relationships. Defendant claims, however, that by the time the injunction was issued, Borrowers' customers had already stopped paying their obligations either to the Bank or to the Borrowers. As a result of the Bank's wrongful actions, it is asserted, the Borrowers became hopelessly behind in their collections and were driven out of business.
The Chancery action was dismissed on June 14, 1993 because the Borrowers had each filed for relief under Chapter 11 of the United States Bankruptcy Code. 11 U.S.C.A. § 1101 to -1174. On November 23, 1993, both filings were converted to straight liquidations under Chapter 7 of the Bankruptcy Code. 11 U.S.C.A. § 701 to -766. In his certification opposing plaintiff's motion for summary judgment, defendant asserted that "[f]or some inexplicable reason, ... very little effort was made to collect [the Borrowers'] receivables... [which] would have gone a long way towards liquidating the obligation owed [to the Bank] for which Plaintiff now seeks payment."
After hearing arguments on June 12, 1998, the motion judge granted summary judgment to plaintiff. The order was entered on June 24,1998.
On appeal, defendant contends that he raised genuine issues of material fact sufficient to preclude the entry of summary judgment against him. He asserts that the Bank's wrongful actions forced the Borrowers to default under their promissory notes and that the Bank failed to dispose of the collateral in a commercially reasonable manner. The trial court held that those defenses were waived under the broad terms of defendant's guaranties.
Defendant's argument that the Bank wrongfully declared the Borrowers' promissory notes to be in default is merely a conclusory assertion. No facts are set forth to establish why, how, or in what manner the declaration of default was wrongful. Similarly, no facts are set forth to establish the details of the Bank's allegedly wrongful acts, or how they caused the subsequent default. Neither is there factual support sufficient to bolster the conclusory assertion that the Bank failed to dispose of collateral in a commercially reasonable manner.
The law is well settled that "[b]are conclusions in the pleadings without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." United States Pipe & Foundry Co. v. American Arbitration Ass'n, 67 N.J.Super. 384, 399-400, 170 A.2d 505 (App.Div.1961); see also R. 4:46-2(b), (c); Baran v. Clouse Trucking, Inc., 225 N.J.Super. 230, 234, 542 A.2d 34 (App. Div.), certif. denied, 113 N.J. 353, 550 A.2d 463 (1988). By the same token, bare conclusory assertions in an answering affidavit are insufficient to defeat a meritorious application for summary judgment.
Each guaranty executed by defendant as "Guarantor" provides in pertinent part that:
[1.] [T]he undersigned [Guarantor] does ... absolutely and unconditionally guarantee to the Bank [the debt].
....
[2.] ... [T]he Bank may release, compromise or settle a claim with the Borrower, the Guarantor or any other party ... without affecting the continuing liability of [the] Guarantor.
[3.] The obligations of the Guarantor hereunder are continuing and unconditional.
[4.]...The validity of this Guaranty and the obligations of the Guarantor hereunder shall not be impaired or terminated for any reason including, without limitation, the following:
*989 ....
(b) the Bank's release or substitution of or failure to protect, secure or insure all or any part of any collateral security for any Obligation or any collateral for any other guarantee of any Obligation;
(c) any failure to record a security instrument or to take or perfect any security interest in any collateral securing any Obligation;
(d) the Bank's assertion of, or failure or delay in exercising, any rights or remedies which it may have against the Borrower, the Guarantor or any other person;
(e) the commencement of a case under the Federal Bankruptcy Code or similar state law by or against the Borrower or any other party liable with respect to any Obligations....
....
[5.] Upon any default of the Borrower... the Bank may (i) proceed directly and without notice against the Guarantor to recover all or part of any Obligation without proceeding against the Borrower or any other person or in respect of any collateral held by the Bank... (iii) sell all or any of the security held by the Bank....
....
[6.] ... No failure or delay on the part of the Bank in exercising any power, remedy or right hereunder or under the documents constituting the Obligations shall operate as a waiver of any such right, remedy or power, nor shall any single or partial exercise of any such right, remedy or power or any abandonment or discontinuance of steps to enforce such a right, remedy or power, preclude any other or further exercise thereof or the exercise of any other right, remedy or power.
It is established that a lender, such as the Bank in this case, may not unjustifiably impair any collateral. National Westminster Bank NJ v. Lomker, 277 N.J.Super. 491, 497, 649 A.2d 1328 (App.Div.1994), certif. denied, 142 N.J. 454, 663 A.2d 1361 (1995). Similarly, a release of collateral held by a creditor or its impairment by improper action or inaction on the creditor's part, will extinguish the obligation of a guarantor, at least to the extent of the value of the security released or impaired. Langeveld v. L.R.Z.H. Corp., 74 N.J. 45, 50-51, 376 A.2d 931 (1977). "[G]uarantors may waive their rights to claim impairment of collateral as a defense in the guaranty agreement. Such a waiver, however, must be unequivocal before it will effectively preclude a guarantor from asserting the defense." Delaware Truck Sales, Inc. v. Wilson, 131 N.J. 20, 34, 618 A.2d 303 (1993).
In Delaware Truck Sales, the form of guaranty was held to be sufficiently unequivocal to preclude the guarantor from asserting impairment of collateral as a defense. Id. at 32, 618 A.2d 303. The Supreme Court said:
The guaranty on its face gives broad rights to Royal Bank. It states that it is "a continuing, absolute and unconditional guaranty" and may be enforced "without first resorting to any security or other property or invoking other available rights or remedies." Thus, under the guaranty Royal Bank had virtually uncontrolled discretion to deal with the collateral, including the right to assign it. See Lenape State Bank v. Winslow Corp., 216 N.J.Super. 115, 127-28, 523 A.2d 223 (App.Div.1987) (unconditional guaranty grants lender full power, in its uncontrolled discretion and without notice to debtor, to deal in any manner with debtor's liabilities and collateral). Arguably, those rights included the right to foreclose on the guarantors' mortgage and forego its other security interests.
[Ibid.]
Here, the guaranties signed by defendant were unambiguous and at least as broad and as specific as the guaranty in the Delaware Truck Sales case. The pertinent portions of the guaranties above set *990 forth show that (a) the obligations were absolute, continuing, and unconditional, (b) the Bank had the right to release, compromise, or settle a claim without affecting the continuing liability of the guarantor, (c) the Bank had the right to release, substitute, or fail to protect or insure any part of the collateral without affecting the liability of the guarantor, (d) the Bank had the right to fail or delay in exercising any rights or remedies against the Borrower and in the event of default, and (e) in the event of default the Bank had the right to proceed directly and without notice against the guarantor without first proceeding against the Borrower or in respect of any collateral held by the Bank.
Although defendant has failed to assert any specific facts to show how the Bank caused the Borrowers to default or how the Bank impaired the collateral, we are nevertheless satisfied that the guaranties, even as strictly construed and interpreted most adversely against the Bank, preclude defendant's asserted defenses to their enforcement. National Westminster Bank NJ, supra, 277 N.J.Super. at 499, 649 A.2d 1328.
Finally, we note that by order dated June 24, 1993, the United States Bankruptcy Court held that as of May 24, 1993, Venet/NJ was indebted to the Bank in the sum of $1,838,383.84 and Venet was indebted to the Bank in the sum of $431,708.86, and that the Bank had acted in good faith. Defendant affixed his signature and consented to the entry of that order.
The June 24, 1998 order granting summary judgment is affirmed.