137 A.3d 560

HARRY ZELNICK AND GINA ZELNICK, PLAINTIFFS, v. MORRIS-TOWN–BEARD SCHOOL, EDWARD SHERMAN, ALEX CURTIS, DARREN BURNS, JOHN MASCARO, PETER CALDWELL, TRA-CEY WETMORE, EDDIE FRANZ, M. THOMAS CONWAY, JOANNE GOLDBERG, AND JOHN AND JANE DOES 1–3, DE-FENDANTS.

Superior Court of New Jersey
Law Division
Essex County

Decided December 22, 2015.

252

254

*Alan L. Zegas* for plaintiffs (*Law Offices of Alan L. Zegas,* attorneys).

*Stephen J. Edelstein* for defendants (*Schwartz Simon Edelstein & Celso, LLC,* attorneys).

VENA, THOMAS R., J.S.C.

I. STATEMENT OF FACTS

This matter comes before the court on defendants' motion for summary judgment. The principal defendant in this action, Morristown–Beard School ("MBS"), is a private educational institution for students in grades six through twelve. The other defendants are MBS's employees. Plaintiffs' claims arise out of an alleged inappropriate sexual relationship that occurred between plaintiffs' daughter, Sharon Zelnick ("Sharon"), and defaulting defendant Edward Sherman ("Sherman"), a former teacher at MBS. At all times relevant, Sharon was a student at MBS and was a minor. Sharon is now an adult who moved to Israel in 2012, where she currently resides. Sharon is not a party to this litigation, has not been deposed, and has not returned to New Jersey since she left in 2012.

The court reviews the facts underlying this matter, as it must, in a light most favorable to the Zelnicks. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.2d* 146 (1995). For this reason, for the purposes of this motion the court presumes the alleged relationship between Sherman and Sharon to have actually occurred as plaintiffs allege despite the motion record's indicating some dispute as to the nature and scope of the relationship. Since the court accepts as true that Sherman and Sharon had an

inappropriate sexual relationship while Sharon was both a minor and Sherman's student, the precise details of Sharon and Sherman's relationship, described in great detail throughout the parties' briefs and exhibits, are largely irrelevant to disposition of defendants' motion. Therefore, the court will only discuss those details to the degree necessary to the analysis of the various portions of defendants' motion instead of restating them in full.

Sharon was educated at MBS from sixth grade through twelfth grade. She graduated from MBS in June 2012. In May 2010, an MBS employee reported to MBS that he had witnessed Sherman "in a tight embrace" with a female student and that he had witnessed Sherman engage in similar, potentially inappropriate, behavior with female students before. MBS did not report that incident to the Division of Child Protection and Permanency ("DCPP"). In March 2011, Sharon went on a school trip to Greece and Turkey. Sherman was one of the chaperones along with several others, at least two of whom were female. Plaintiffs did not join Sharon on the trip. While in Greece, Sharon feigned an illness, but shortly after suffered from a real illness. MBS policy required same-sex chaperones supervise ill students. Nevertheless, Sherman, in violation of internal MBS policy, stayed with Sharon in Greece while she recuperated. Plaintiffs consented to Sherman's staying with Sharon, but Sherman at least initially failed to notify MBS of the situation. When Sherman was eventually disciplined for his failure to abide by MBS policy in Greece, plaintiffs e-mailed MBS to note their approval of Sherman's handling of the situation and to request leniency for Sherman. The court accepts as true that plaintiffs did not know the extent of Sherman and Sharon's relationship at the time they sent the e-mail to MBS approving of Sherman's supervising Sharon while she was ill.

After the trip to Greece, there were significant rumors circulating within the MBS community regarding Sherman and Sharon's relationship. Shortly after their return from Greece, MBS was advised by multiple families that Sherman and Sharon had inap-

propriate contact during the Greece trip. For the purposes of this motion, the court presumes the inappropriate sexual contact between Sherman and Sharon that was alleged to have occurred in Greece to be true. MBS did not contact DCPP following these allegations. In December 2011, MBS received an anonymous tip via e-mail that Sherman was engaged in an inappropriate relationship with a female student. MBS did not contact DCPP following this anonymous tip either. In January 2012, defendant Peter Caldwell received a call from an MBS parent who was concerned about the rumored relationship between Sharon and Sherman. MBS did not contact DCPP in response to that phone call. DCPP eventually got involved, as did the Morris County Prosecutor. In the course of the prosecutor's investigation, Sherman fled to Israel.

While Sharon was still enrolled at MBS during her senior year, she did not physically attend school, in part due to Sharon's psychologist diagnosing her with post-traumatic stress disorder and in part due to rumors circulating regarding Sharon's relationship with Sherman. MBS did not permit Sharon to attend graduation exercises, but she did receive a diploma from MBS in June 2012. Following her graduation, Sharon moved to Israel and has not returned to New Jersey since.

The surviving counts of plaintiffs' complaint are: (i) breach of contract, (ii) gross negligence, (iii) negligent infliction of emotional distress, and (iv) fraud. Defendants assert plaintiffs' gross negligence and fraud counts must be dismissed because only Sharon has standing to assert those claims. Even if plaintiffs did have standing, defendants argue plaintiffs have failed to introduce sufficient evidence to create a genuine issue of material fact for trial. With respect to plaintiffs' count for breach of contract, defendants argue there is no genuine issue of material fact to justify a trial and because plaintiffs are improperly trying to assert a cause of action for contract, when the claim actually sounds in tort. With respect to plaintiffs' count for negligent infliction of emotional distress, defendants argue that count should

be dismissed because plaintiffs have failed to introduce sufficient evidence to satisfy the requisite elements of that tort.

Plaintiffs argue they have standing to assert all claims because they are seeking redress for damages they suffered directly, not damages derivative of those suffered by Sharon. With respect to their breach of contract claim, plaintiffs argue there are genuine issues of material fact with respect to the terms of that contract and with respect to whether defendants breached a covenant to provide Sharon with a safe environment by allowing her to be sexually abused by a teacher. With respect to their negligent infliction of emotional distress, gross negligence, and fraud claims, plaintiffs argue that there are genuine issues of material fact with respect to all that preclude the grant of summary judgment.

## II. ANALYSIS

### A. *Standard for Summary Judgment*

Summary judgment is appropriate when the movant demonstrates that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment ... as a matter of law." *R.* 4:46–2(c). A genuine issue of material fact exists when the evidence presented on motion, "when viewed in the light most favorable to the non-moving party, [is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146. The court is compelled to accept the non-movant's version of the facts as true and give the non-movant "the benefit of all inferences that those facts support." *Baird v. Am. Med. Optics,* 155 *N.J.* 54, 58, 713 *A.*2d 1019 (1998) (citing *Brill, supra,* 142 *N.J.* at 520, 666 *A.*2d 146; *Judson v. Peoples Bank & Trust Co.,* 17 *N.J.* 67, 110 *A.*2d 24 (1954)).

However, an opponent to a motion for summary judgment may not simply point to any fact in dispute to create a genuine issue of material fact. For instance, if the facts offered by the opposing party are "[o]nly facts which are ... of an

insubstantial nature, a mere scintilla, 'Fanciful, frivolous, gauzy or merely suspicious,' he will not be heard to complain if the court grants summary judgment. . . ." *Brill, supra,* 142 *N.J.* at 529, 666 *A.*2d 146 (quoting *Judson, supra,* 17 *N.J.* at 75, 110 *A.*2d 24.). A party opposing a motion for summary judgment may not rely on unsupported assertions in their pleadings or in their opposition to defeat the motion. *Brae Asset Fund, L.P. v. Newman,* 327 *N.J.Super.* 129, 134, 742 *A.*2d 986 (App.Div.1999) (internal citations omitted). Indeed, the party opposing a motion for summary judgment is compelled to come forward with affirmative proof that "the facts are not as the movant alleges." *Spiotta v. William H. Wilson, Inc.,* 72 *N.J.Super.* 572, 581, 179 *A.*2d 49 (App.Div.) (citing *Heljon Mgmt. Corp. v. Di Leo,* 55 *N.J.Super.* 306, 312–313, 150 *A.*2d 684 (App.Div.1959)), *certif. denied* 37 *N.J.* 229, 181 *A.*2d 12 (1962).

B. *Breach of Contract*

A cause of action exists for breach of contract when the plaintiff can demonstrate that there exists "[a] valid contract, defective performance by the defendant, and resulting damages." *Coyle v. Englander's,* 199 *N.J.Super.* 212, 223, 488 *A.*2d 1083 (App.Div.1985) (citation omitted). In addition to the express terms of a contract, terms may be implied in fact and enforceable "[b]y interpretation of a promisor's word and conduct in light of the surrounding circumstances." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford,* 144 *N.J.* 564, 574, 677 *A.*2d 747 (1996) (citing *Restatement (Second) of Contracts* § 4 cmt. a (Am. Law Inst.1979)). The construction of contract terms and whether the manner in which they were executed constitutes a breach is an issue of fact best left for a jury. *Great Atl. & Pac. Tea Co., Inc. v. Checchio,* 335 *N.J.Super.* 495, 502, 762 *A.*2d 1057 (App.Div.2000).

With respect to the element of damages, our courts abide by the rule of *Hadley v. Baxendale,* 156 *Eng. Rep.* 145, 9 *Exch.* 341, (Eng.1854) in awarding consequential damages. In other words, the injury suffered must be "a natural and proximate result

of [the] breach which can be fairly said to have been within the contemplation of the parties at the time the contract was entered." *Coyle, supra,* 199 *N.J.Super.* at 223, 488 *A.*2d 1083 (quoting *Strong v. Commercial Carpet Co.,* 163 *Ind.App.* 145, 322 *N.E.*2d 387, 392 (1975))(internal quotation marks omitted). Generally, failure to abide by a contractual term does not create liability in tort. *Id.* at 226, 488 *A.*2d 1083; *Saltiel v. GSI Consultants, Inc.,* 170 *N.J.* 297, 316, 788 *A.*2d 268 (2002).

In this case, defendants argue the bargain contained in MBS's enrollment contract was essentially limited to providing Sharon with an education in exchange for tuition, fees, bookstore expenses, and Sharon's maintenance of academic good standing. Defendants rebut plaintiffs' assertion that there is an implied "safe learning environment" clause in their contract and claim that plaintiffs' attempt to create such a term constitutes an inappropriate attempt to create a tort claim out of their contract.

Plaintiffs argue there was an implied term contained in the enrollment contract between plaintiffs and MBS to provide a "safe learning environment," and allege that MBS breached that term by failing to provide Sharon with a safe learning environment by virtue of Sherman's misconduct and their failure to report suspicions of that misconduct to DCPP. Plaintiffs assert that as a result of that breach, they have suffered damages in the form of exacerbated depression, insomnia, anxiety, and the loss of a relationship with their daughter. Further, plaintiffs say had they known about Sherman's acts, they would not have re-enrolled Sharon at MBS. Summary judgment is inappropriate on their breach of contract claim, plaintiffs argue, because there are genuine issues of material fact since a factfinder will have to consider parol evidence to interpret the implied "safe learning environment" term, as well as evidence as to whether and how the term was breached.

It is clear to this court that there is no "safe learning environment" term implied in plaintiffs' contract with MBS. Plaintiffs cite to no legal authority that creates such an implied term as a matter of law in MBS's contract or any other school enrollment

agreement. Plaintiffs have also failed to introduce evidence that MBS engaged in sufficient conduct that would create such a term. *Wanaque, supra,* 144 *N.J.* at 574, 677 *A.2d* 747. Even if such a term could be said to exist, as defendants point out in their brief, it would appear plaintiffs are attempting to fashion a tort action arising out of the breach of that term, which is generally inappropriate on a breach of contract claim. *Coyle, supra,* 199 *N.J.Super.* at 223, 488 *A.2d* 1083; *Saltiel, supra,* 170 *N.J.* at 316, 788 *A.2d* 268. There is therefore no ambiguous implied contract term of which a factfinder could consider the breach or construction that could preclude the grant of summary judgment, as would be required by *A & P, supra,* 335 *N.J.Super.* at 502, 762 *A.2d* 1057. Furthermore, even if such an implied term did exist, plaintiffs have provided no evidence or authority to suggest that the damages sought are "a natural and proximate result of [the] breach which can be fairly said to have been within the contemplation of the parties at the time the contract was entered." *Coyle, supra,* 199 *N.J.Super.* at 223, 488 *A.2d* 1083. Since plaintiffs have failed to introduce sufficient evidence that would permit a rational factfinder to find in their favor on the issue of breach of contract or the appropriateness of damages arising from that alleged breach, summary judgment in favor of defendants is appropriate on their breach of contract claim. *Brill, supra,* 142 *N.J.* at 540, 666 *A.2d* 146.

C. *Gross Negligence and Negligent Infliction of Emotional Distress (NIED)*

1. *Gross Negligence*

 It is hornbook law that to succeed upon a cause of action for negligence, a plaintiff must demonstrate the existence of "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.,* 212 *N.J.* 576, 594, 59 *A.3d* 561 (2013) (citing *Stanley Co. of Am. v. Hercules Powder Co.,* 16 *N.J.* 295, 315, 108 *A.2d* 616 (1954), *Ochs v. Pub. Serv. Railway Co.,* 81 *N.J.L.* 661,

662, 80 *A.* 495 (E. & A.1911), and *Black's Law Dictionary* 1133–34 (9th ed.2009)). Gross negligence has the same elements as ordinary negligence because "[n]egligence differs from gross negligence only in degree, not in kind." *Monaghan v. Holy Trinity Church,* 275 *N.J.Super.* 594, 599, 646 *A.*2d 1130 (App.Div.1994) (citing Prosser and Keeton, *The Law of Torts* § 34 at 212 (5th ed.1984)); *Oliver v. Kantor,* 122 *N.J.L.* 528, 532, 6 *A.*2d 205 (Sup.Ct.1939), *aff'd,* 124 *N.J.L.* 131, 10 *A.*2d 732 (E. & A.1940); *Tessler and Son, Inc. v. Sonitrol Sec. Sys.,* 203 *N.J.Super.* 477, 484, 497 *A.*2d 530 (App.Div.1985); *Draney v. Bachman,* 138 *N.J.Super.* 503, 511, 351 *A.*2d 409 (Law Div.1976) (cited with approval in *Foldi v. Jeffries,* 93 *N.J.* 533, 548, 461 *A.*2d 1145 (1983)).

Ordinary negligence is converted to gross negligence when a defendant fails, for example, "to exercise a slight degree of care," where there is the "lack of even scant care," or where a defendant acts with "thoughtless disregard to the consequence that may follow from an act" or "utter unconcern for the safety of others." *Model Jury Charges (Civil),* "Gross Negligence" (2004). The Model Jury Charge goes on to explain that to make a finding of gross negligence, the jury must find "[t]hat the injury was not the result of ... mistaken judgment.... [R]ather it must appear that the injury was the natural and probable result of the failure to exercise slight care or diligence." *Ibid.*

To establish duty of care and whether that duty was violated when matters are involved that are "[s]o esoteric that jurors of common knowledge and experience cannot form a valid judgment as to whether the conduct of a party was reasonable," expert testimony is typically required. *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982). Child abuse reporting statutes do not typically create a duty of care or a basis for civil liability. *See, e.g., J.S. v. R.T.H.,* 155 *N.J.* 330, 349, 714 *A.*2d 924 (1998) (declining to find violation of *N.J.S.A.* § 9:6–8.10 to constitute negligence per se); *N.J.S.A.* § 18A:37–18 (noting that the Anti–Bullying Bill of Rights Act "[d]oes not create ... any

tort liability"). Therefore, with respect to a claim that a school administration's acts or omissions in response to reports of child abuse were unreasonable, in "more contentious circumstances," our Supreme Court has recognized that expert testimony "regarding educational theories and principles, as well as the standards, policies, and procedures employed in the profession by similarly situated educators" may be necessary to aid jurors in understanding whether a school's response to any given incident was reasonable and within the applicable standard of care. *L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ.*, 189 *N.J.* 381, 409–10, 915 *A.*2d 535 (2007).

As with any civil claim, a claim for gross negligence may only be brought "in the name of the real party in interest." *R.* 4:26–1. A party is the real party in interest, and therefore has standing, when the party has "[a] sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the event of an unfavorable decision." *In re N.J. Bd. of Pub. Util.*, 200 *N.J.Super.* 544, 556, 491 *A.*2d 1295 (App.Div.1985) (citing *N.J. Chamber of Commerce v. N.J. Election Law Enf't Comm'n*, 82 *N.J.* 57, 67, 411 *A.*2d 168 (1980)). A party does not typically have standing "to assert the rights of a third party." *Abbott v. Burke*, 206 *N.J.* 332, 371, 20 *A.*3d 1018 (2011) (citing *Jersey Shore Med. Ctr.–Fitkin Hosp. v. Estate of Baum*, 84 *N.J.* 137, 144, 417 *A.*2d 1003 (1980) and *State v. Norflett*, 67 *N.J.* 268, 277 n. 7, 337 *A.*2d 609 (1975)). However, a parent may assert the rights of their minor child in a negligence action. *R.* 4:26–2(b)(2).

In this case, defendants argue they did not owe a duty of care to plaintiffs to report Sharon and Sherman's inappropriate relationship to the DCPP or to prevent that relationship. Defendants go on to argue that if a duty was owed to anyone, it was owed to Sharon. The parties do not dispute that Sharon is now an emancipated adult and was an emancipated adult when this suit commenced. According to defendants, it therefore follows that since Sharon is now an adult, Sharon is the real party in interest

and plaintiffs do not have standing to prosecute a claim for gross negligence on her behalf. Defendants further argue that even if plaintiffs had standing and were owed a duty, there is insufficient evidence to establish a standard of care because expert testimony is necessary to aid a jury in ascertaining what response from a school district would be reasonable in response to allegations of an inappropriate student-teacher relationship.

In their opposition, plaintiffs essentially argue that since MBS was aware of Sharon's abuse by virtue of multiple individuals who witnessed Sharon's inappropriate relationship with Sherman, they had a duty to report it to DCPP under certain provisions of New Jersey's Anti–Bullying Bill of Rights Act, *N.J.S.A.* § 18A:37–13 to –37 (the "Act").

 Plaintiffs' reliance on the Act is clearly misguided because the statute, by its own terms, does not create tort liability and therefore does not establish a standard of care. *N.J.S.A.* § 18A:37–18. Plaintiffs do not cite to any other authority that would support the proposition that MBS owed them a duty of care to report Sharon's inappropriate relationship and harassment, but instead focus on the obviousness of Sharon's inappropriate relationship with Sherman and the intensity of the harassment that she suffered. This Court acknowledges that if MBS owed anyone a duty to prevent or stop Sharon's abuse, that duty was owed to Sharon. *Titus v. Lindberg*, 49 *N.J.* 66, 73–74, 228 *A.*2d 65 (1967). Since there is no authority cited to suggest that plaintiffs were owed a duty and since Sharon is now an adult, plaintiffs are not the real parties in interest and therefore do not have standing to bring an action for gross negligence under the facts presented. *R.* 4:26–1; *Abbott v. Burke*, 206 *N.J.* at 371, 20 *A.*3d 1018; *In re N.J. Bd. of Pub. Util.*, *supra*, 200 *N.J.Super.* at 556, 491 *A.*2d 1295. Even if plaintiffs had standing, since they have failed to demonstrate they were owed a duty, they have failed to maintain all elements necessary to maintain a prima facie case for negligence. *JCP & L*, *supra*, 212 *N.J.* at 594, 59 *A.*3d 561.

■ Furthermore, even if plaintiffs had standing and MBS owed them a duty, there is no evidence on the motion record that could be presented to a factfinder for them to determine whether MBS's acts were reasonable. The court agrees the type of situation at issue in this case is sufficiently esoteric and the very type of contentious circumstance that would lend itself to the necessity for an expert to aid a jury to understand "educational theories and principles, as well as the standards, policies, and procedures employed in the profession by similarly situated educators," as was suggested by our Supreme Court. *L.W., supra,* 189 *N.J.* at 409–10, 915 *A.*2d 535; *Butler, supra,* 89 *N.J.* at 283, 445 *A.*2d 1141. Even assuming defendants violated a duty of care owed to plaintiff, absent expert testimony, the court finds a jury would not be able to distinguish between whether defendants' acts or omissions were the result of mere mistaken judgment or the "lack of even scant care" that would be necessary for a finding of gross negligence pursuant to our model jury instructions. *Model Jury Charge (Civil),* "Gross Negligence" (2004).

While plaintiffs' point is well taken that it is "[t]he *jury* not the motion judge, [who] would be entitled to the benefit of the expert testimony at trial," (defendant's brief at 22, ¶ 2) (emphasis in original), on this motion for summary judgment, the court is charged with ascertaining what evidence exists at all and examining whether that evidence is sufficient to permit the finder of fact to find in favor of plaintiffs. *Brill, supra,* 142 *N.J.* at 539–40, 666 *A.*2d 146. The court finds that absent an expert report with respect to the reasonableness of defendants' actions, there is insufficient evidence to permit a rational factfinder to find in plaintiffs' favor. Since the court finds plaintiffs have no standing, that MBS did not owe them a duty, and that even if they did a rational factfinder could not find in plaintiffs' favor, defendants are entitled to judgment as a matter of law on plaintiffs' gross negligence count. *Id.* at 540, 666 *A.*2d 146.

### 2. *NIED*

■ To maintain a cause of action for NIED, a plaintiff must demonstrate that a defendant was negligent, that the defen-

dant's negligence was the proximate cause of emotional harm to the plaintiff, and that the defendant owed a duty to the plaintiff. *Decker v. Princeton Packet, Inc.*, 116 *N.J.* 418, 429, 561 *A.*2d 1122 (1989). The keystone of whether an NIED defendant owed a duty of care in context of NIED is foreseeability, indeed, "liability should depend on the defendant's foreseeing fright or shock severe enough to cause substantial injury in a person normally constituted." *Ibid.* (quoting *Caputzal v. The Lindsay Co.*, 48 *N.J.* 69, 76, 222 *A.*2d 513 (1966)) (internal quotation marks omitted).

In this case, as noted previously, there is no authority cited to support the proposition that defendants owed anyone but Sharon a duty of care to prevent or stop her abuse. With respect to foreseeability, plaintiffs proffer no evidence or authority that could support the conclusion that Sharon's estrangement, the alleged cause of plaintiffs' emotional distress, was a foreseeable consequence of their alleged failure to properly report Sharon's abuse to the DCPP. Furthermore, as explained previously, even if a duty were owed, absent expert testimony there is insufficient evidence that would permit a rational factfinder to find defendants acted unreasonably, and thus negligently. For those reasons, plaintiffs have failed to introduce sufficient evidence that would permit a rational factfinder to find that plaintiffs have satisfied the elements of NIED. Defendants are therefore entitled to judgment as a matter of law on plaintiff's NIED count. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

D. *Fraud*

To maintain a cause of action for fraud, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Allstate New Jersey Ins. Co. v. Lajara,* 222 *N.J.* 129, 147, 117 *A.*3d 1221 (2015) (quoting *Banco Popular N. Am. v. Gandi,* 184 *N.J.* 161, 172–73, 876 *A.*2d 253 (2005)).

■ Defendants argue plaintiffs' fraud claim must fail as a matter of law for several reasons. First, defendants assert that even if there were any intentional misrepresentations, the harm that flowed from those misrepresentations flowed to Sharon, depriving plaintiffs of standing. Second, defendants argue that even if plaintiffs did have standing, defendants did not make any misrepresentations, but rather kept plaintiffs apprised of Sherman's staying behind with Sharon in Greece and all subsequent steps defendants took to investigate allegations of Sherman's wrongdoing. Lastly, defendants point to the fact that even if they did make a misrepresentation, there is no evidence to support a finding that those misrepresentations were knowing, intentional, or calculated to induce plaintiffs' reliance.

Plaintiffs' chief argument in opposition to defendants' motion for summary judgment on its fraud count is that since fraud involves issues of defendants' state of mind and intent, those issues are best resolved by a factfinder, rendering summary judgment inappropriate. Furthermore, plaintiffs point to their deposition testimony, wherein they stated that defendants failed to disclose previous allegations against Sherman and lied regarding the thoroughness of their investigation. Plaintiffs allege they relied upon these misrepresentations, causing them to feel a false sense of security, which caused them damages to the extent that they kept Sharon at MBS, lost the relationship they had with Sharon, and suffered emotional distress as a result of that loss.

In this case, plaintiffs have failed to make a sufficient showing of affirmative evidence to permit a rational factfinder to find they have satisfied the elements of common-law fraud. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146; *Spiotta, supra,* 72 *N.J.Super.* at 581, 179 *A.*2d 49. Rather, plaintiffs' opposition effectively relies upon bare assertions that defendants made intentionally false representations, which are insufficient to defeat a motion for summary judgment. *Brae, supra,* 327 *N.J.Super.* at 134, 742 *A.*2d 986. Absent any affirmative evidence of defendants' knowing and intentional misrepresentations, plaintiffs' allegations are of the

very "gauzy or merely suspicious" allegations that are insufficient to create a genuine issue of material fact. *Brill, supra,* 142 *N.J.* at 529, 666 *A.*2d 146. *See also, Optopics Labs. Corp. v. Sherman Labs., Inc.,* 261 *N.J.Super.* 536, 544, 619 *A.*2d 614 (App.Div.1993) (observing that "[a]n opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief ... to create the existence of a genuine issue of material fact") (quoting *Swarts v. Sherwin–Williams Co.,* 244 *N.J.Super.* 170, 178, 581 *A.*2d 1328 (App.Div.1990)) (internal quotation marks omitted) (modification in source). Absent sufficient evidence to permit a rational factfinder to find in favor of plaintiffs at trial on the issue of whether defendants made knowing and intentional misrepresentations regarding the quality of their internal investigation, defendants are entitled to judgment as a matter of law on plaintiffs' fraud count. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

It is of great import to note that in dismissing plaintiffs' complaint, the court has not weighed any evidence or made a single credibility determination. Weighing evidence and making credibility determinations is the province of a jury. *Ibid.* The court's decision today is made on two bases: the quantum of evidence provided, and whether on the basis of that evidence a rational factfinder could find in favor of plaintiff. The court is sympathetic to plaintiffs and the effect the inappropriate relationship between Sherman and Sharon has had and continues to have on them and their family. However, despite a careful and searching review of the evidential materials presented in a light most favorable to the plaintiffs, this court finds the evidence insufficient to create a genuine issue of material fact as defined by *Brill* to warrant submission to a jury.

## III. CONCLUSION

For the foregoing reasons and on the basis of the cited authority, defendant Morristown–Beard School's and the individual defendants' motion for summary judgment is granted, dismissing plaintiffs Harry Zelnick's and Gina Zelnick's complaint with prejudice.