**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4455-16T3

ABIR ELGHANDOUR,

     Plaintiff-Appellant,

v.

MARINA DISTRICT DEVELOPMENT
COMPANY, LLC, d/b/a BORGATA
HOTEL, CASINO & SPA,

     Defendant-Respondent.

_____

          Submitted October 9, 2018 – Decided November 8, 2018

          Before Judges Messano and Gooden Brown.

          On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-5963-14.

          Costello & Mains, LLC, attorneys for appellant (Deborah L. Mains, on the brief).

          Cooper Levenson, PA, attorneys for respondent (Russell L. Lichtenstein and Alyson M. Tomljenovic, of counsel; Jennifer B. Swift, on the brief).

PER CURIAM

Plaintiff Abir Elghandour appeals from the Law Division's June 16, 2017 order granting summary judgment to defendant, Marina District Development Company, LLC, d/b/a Borgata Hotel, Casino & Spa, and dismissing her complaint alleging violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 (the LAD). We confine our review to the motion record before the Law Division judge. Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000).

I.

Plaintiff began working as a poker dealer in defendant's casino in 2006. In 2010, plaintiff became a "casual poker dealer," that is, a dealer who worked between one to five days per week as needed. Defendant used a computer program to schedule the casual dealers, subject to changes made by the dealer coordinator (DC), who could adjust schedules as required. All casual dealers were required to follow the DC's scheduling adjustments, and the DC would give plaintiff her specific table assignments. Plaintiff routinely reported to shift managers Michael Brown and Steve Coyle, who in turn reported to Vincent Alonge, Director of Poker Operations. None of these men controlled plaintiff's table assignments.

2

In deposition testimony, plaintiff alleged that all three men touched her without her consent on multiple occasions beginning in 2006 and ending in 2011, when plaintiff's resistance to their contact was acknowledged. She also refused invitations from the men to attend parties. According to plaintiff, female employees who accepted those invitations, and who had sexual relationships with the men, received preferential schedule and table assignments at work. In front of plaintiff, male shift managers would brag about sexual encounters with certain employees.

Plaintiff testified that beginning in 2007, she complained about this to defendant's human relations department (HR). She claimed to have filed more than twenty-five written complaints with HR, and complained about the conduct through an employee hotline in June 2011. Plaintiff testified that HR had documentation of those complaints. Lydia Waters, defendant's HR director, testified in her deposition that in accordance with company policy and procedure, HR documented all employee complaints. However, plaintiff produced only a case number assigned to her hotline complaint and no other documents regarding her written complaints.

On July 29, 2014, Waters suspended plaintiff for three days pending further investigation. The suspension notice accused plaintiff of insubordination

and abandonment of her work assignment on July 19 and 22. Plaintiff testified at deposition about the events leading up to her suspension.

On July 19, the DC assigned plaintiff to a "tournament game," where players bet chips with no actual value, not a "live" game, where players use chips with value. According to plaintiff, tournament games yield less tip money for the dealers. After two hours, plaintiff left the tournament room and went to the main "poker room," where she noticed a "junior" female dealer was dealing a live game. Plaintiff immediately complained about the tournament assignment to Coyle, Brown and the DC on the open floor of the poker room. She said that she made a complaint that day or the next to HR. Plaintiff denied she was insubordinate or that she left her assignment.

On July 22, plaintiff signed her time card to deal a tournament game from 10:30 to 11 a.m. She re-signed her time card at 11 a.m. Defendant alleged plaintiff purposely signed in for a poker game that she did not actually deal, but plaintiff claimed the DC changed her schedule and told her to take her break at 10:30 after she had already signed in.

A-4455-16T3

Defendant terminated plaintiff on August 5, 2014.[1]  An email from HR to Alonge dated the same day, which plaintiff countersigned, notes the July 19 incident was part of a "pattern of argumentative behavior . . . addressed with [plaintiff] on multiple occasions during [her] employment."  Plaintiff denied the charges and unsuccessfully contested her termination through defendant's appeals process.

When it moved for summary judgment, defendant produced the single complaint made by plaintiff in its records.  That involved plaintiff's 2011 allegations that a female DC discriminated against her by scheduling her to deal tournaments and not live games.  Defendant also produced multiple unsatisfactory performance evaluations of plaintiff and citations for misconduct during her employment.

In his written statement of reasons that accompanied the order granting summary judgment, the judge essentially concluded no other evidence in the record corroborated plaintiff's bare assertions.  He reasoned that plaintiff failed to raise a genuine dispute as to material facts, and defendant was entitled to judgment as a matter of law.

---

[1]  Plaintiff said she received a termination letter on August 2, 2014, but none is in the record.

## II.

Plaintiff contends the judge misapplied summary judgment standards because a jury reasonably could conclude that defendant discriminated against her because of her gender, both in terms of permitting a hostile work environment and quid pro quo sexual harassment. Plaintiff also argues a jury reasonably could conclude that defendant retaliated against her when she complained by suspending her and then terminating her employment. We disagree and affirm.

We review the grant of summary judgment de novo, applying the same standard used by the trial judge, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

"The practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

A-4455-16T3

We must decide "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The LAD prohibits employers from discriminating against employees based upon their gender. N.J.S.A. 10:5-12(a).

> To prove a LAD claim for hostile work environment sexual harassment, a plaintiff has the burden to demonstrate that "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive."
>
> [Griffin v. City of E. Orange, 225 N.J. 400, 413-14 (2016) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)).]

"'When the harassing conduct is sexual or sexist in nature,' as 'when a plaintiff alleges that she has been subjected to sexual touchings or comments,' the first

element 'will automatically be satisfied.'" Ibid. (quoting Lehmann, 132 N.J. at 605).

The Court in Lehmann also described the elements of quid pro quo sexual harassment:

> Quid pro quo sexual harassment occurs when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment. It involves an implicit or explicit threat that if the employee does not accede to the sexual demands, he or she will lose his or her job, receive unfavorable performance reviews, be passed over for promotions, or suffer other adverse employment consequences.
>
> [132 N.J. at 601.]

In this case, not a shred of evidence in the motion record supports plaintiff's claims of hostile environment or quid pro quo sexual harassment. Virtually all citations to the motion record contained in plaintiff's appellate brief regarding her claims of sexual harassment reference her own deposition testimony, interrogatory answers or statements she made to defendant's representatives when she appealed her termination. Plaintiff's limited references to other witnesses, or to women who allegedly received favorable treatment for yielding to sexual advances, fail to identify them with anything other than a single name. The record does not contain statements, certifications or deposition

testimony from any of them, nor does the record corroborate plaintiff's claim of having made twenty-five written complaints about the discriminatory conduct.

Plaintiff argues that her allegations alone are sufficient to defeat summary judgment, but they are not. "To defeat a motion for summary judgment, the opponent must 'come forward with evidence' that creates a genuine issue of material fact." Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "Bare conclusory assertions, without factual support in the record, will not defeat a meritorious application for summary judgment." Horizon Blue Cross Blue Shield, 425 N.J. Super. at 32 (citing Brae Asset Fund, LP v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999)); accord Puder v. Buechel, 183 N.J. 428, 440-41 (2005) ("[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the [summary judgment] motion."); Oakley v. Wianecki, 345 N.J. Super. 194, 201 (App. Div. 2001) ("unsubstantiated inferences and feelings" are insufficient to defeat a motion for summary judgment). We need not explicate at length the facts in Oakley, except to point out that it presented similar unsubstantiated claims of sexual harassment in the workplace. Id. at 197-200.

The LAD also makes it unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act." N.J.S.A. 10:5-12(d). To establish a prima facie case of retaliation, a plaintiff must demonstrate that he or she (1) "engaged in a protected activity known to the employer"; (2) was "subjected to an adverse employment decision"; and (3) there was "a casual link between the protected activity and the adverse employment action." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (citing Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)). In evaluating a retaliation claim under the LAD, the Court has followed the United States Supreme Court's burden-shifting analysis delineated in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802–04 (1973). Battaglia, 214 N.J. at 546–47. If the plaintiff establishes a prima facie case, a defendant has the burden to provide a legitimate reason for the adverse employment action. Woods, 290 N.J. Super. at 274. The plaintiff then must show that a retaliatory intent motivated the adverse employment action either by indirectly "proving that the proffered reason is a pretext for the retaliation," or by directly showing "that a retaliatory [intent] more likely than not motivated [the] defendant's action." Ibid.

Assuming arguendo plaintiff's bare assertions were sufficient to establish a prima facie case of retaliation in violation of the LAD, summary judgment was nevertheless appropriate because she failed to rebut the abundant proof supporting defendant's non-pretextual reasons for termination. Regarding the burden-shifting analysis, "[w]e have adopted and consistently applied th[e] standard" set out by the Third Circuit in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). DeWees v. RCN Corp., 380 N.J. Super. 511, 528 (App. Div. 2005).

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).
>
> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

A-4455-16T3

[Fuentes, 32 F.3d at 764-65 (citations and quotations omitted).]

Our review of the motion record convinces us summary judgment was appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4455-16T3