**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1761-18T2

JAMISON BRIDGEFORTH,

    Plaintiff-Appellant,

v.

COMPASS GROUP USA, INC.,
GOURMET DINING, LLC,
TONY MOON, and PEDRO LAZO,

    Defendants-Respondents,

and

IBEW, LOCAL 1158,

    Defendant.

_____

> Submitted May 12, 2020 – Decided June 11, 2020
>
> Before Judges Hoffman and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8477-16.
>
> Hegge & Confusione, LLC, attorneys for appellant (Michael James Confusione, of counsel and on the brief).

Littler Mendelson, PC, attorneys for respondents (Alice A. Kokodis, of counsel and on the brief).

PER CURIAM

Plaintiff Jamison Bridgeforth appeals from two Law Division orders entered on September 14, 2018, summarily dismissing his complaint against defendants, Compass Group USA, Inc. (Compass), Gourmet Dining, LLC (Gourmet Dining), IBEW, Local 1158 (IBEW), Tony Moon (Moon) and Pedro Lazo (Lazo), in their individual and official capacities. The first order dismissed claims under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -146, the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49, as well as common law claims for assault, breach of express and implied contract, and the implied covenant of good faith and fair dealing. The second September 14, 2018 order in favor of IBEW dismissed claims for breach of contract and the implied covenant of good faith and fair dealing.

Plaintiff also appeals the October 26, 2018 order denying his motion for reconsideration. We have considered the arguments raised in light of the motion record and applicable legal standards and affirm.

I.

We derive the following facts from the summary judgment record, viewing the facts in the light most favorable to plaintiff as the non-moving party. On September 21, 2014, Gourmet Dining hired plaintiff to work as a kitchen crew employee at Bloomfield College, at an hourly rate of $9. Lazo was the executive chef in charge of the kitchen and had supervisory authority over plaintiff, while Moon served as head director and supervisor of all employees who worked in the cafeteria. Plaintiff was responsible for maintaining the kitchen work areas, equipment, and cafeteria. On average, he worked twenty-five hours per week during the academic year, with employment terminating during school breaks. Hourly employees were subject to fluctuating hours based upon school enrollment, staffing, and need.

In late 2014, plaintiff approached management to complain about Lazo using obscenities towards him and other staff members. On September 16, 2015, plaintiff claimed Lazo assaulted him with a hot pan, when Lazo failed to yell "hot pan" to alert nearby employees as he had done in the past. According to plaintiff, Lazo burned him intentionally. Plaintiff worked for three days without incident, and on September 21, 2015, he sought medical treatment at East Orange General Hospital emergency room. He was evaluated and treated for a

burn, without blistering or broken skin, administered a tetanus shot, and released without any further treatment. Plaintiff received workers' compensation benefits as a result of the burn.

On October 19, 2015, plaintiff was issued two Corrective Communications. One was for not being at his workstation even though he clocked in for the day, and the other for wearing a durag instead of the uniform baseball cap.

On December 16, 2015, the day before the college recessed for winter break, plaintiff told Moon that the water quality in the cafeteria was compromised and suggested changing the water filter. Plaintiff alleged Moon took no action to address his concern. Moon denied having any such conversation. Additionally, plaintiff claimed he was subjected to abusive behavior, such as being forced to work in isolation; being laughed at by his co-workers because of his broken headphones; directed to eat meals next to the dumpsters; and questioned for wearing a durag under his uniform hat.

Before the winter semester commenced, Gourmet Dining informed plaintiff and four other employees that their hours would be reduced because of an expected decline in student enrollment. Because he reported the water issue to Moon, plaintiff claimed he was retaliated against. Plaintiff was offered

evening hours, but chose not to return to work due to a scheduled "job" he had at night, at a non-paying position with his recording company. Consequently, plaintiff claimed he was effectively terminated as of January 17, 2016, in retaliation for raising the health issue regarding the water filter and his filing of a workers' compensation petition after being burned.

Plaintiff's complaint asserted multiple claims: (1) worker's compensation retaliation in violation of the Act, N.J.S.A. 34:15-1 to -146; (2) violations of CEPA, N.J.S.A. 34:19-1 to -14; (3) violations of NJLAD, N.J.S.A. 10:5-1 to -49 (disability discrimination); (4) retaliation in violation of the NJLAD, N.J.S.A. 10:5-1 to -49; and (5) assault as against Lazo. Plaintiff also brought common law claims for breach of contract—both express and implied—and the implied covenant of good faith and fair dealing as to the corporate defendants.

Following discovery, defendants moved for summary judgment. After hearing arguments by counsel for defendants and plaintiff, who was self-represented, the motion judge rendered a decision from the bench. The judge stated there was no material issue in dispute and judgment was appropriate as a matter of law on each claim.

The judge noted that plaintiff "made the decision to stop working" and was offered more hours due to increased staffing needs immediately following

his injury and workers' compensation claim. Five months later, plaintiff, along with other employees, were offered modified work schedules because of a decrease in student enrollment. Because plaintiff's decision to stop working the new schedule was voluntary, the judge dismissed his wrongful discharge claim.

The judge then addressed the CEPA claim and plaintiff's assertion that his complaint about a dirty water filter constituted a whistleblowing activity. Since plaintiff did not establish a connection between the purported whistleblowing activity and an adverse employment action, and "provided no specific . . . reference to any law, rule, regulation or public policy he reasonably believed was violated by [d]efendants," the judge dismissed the CEPA claim.

As to the NJLAD claim, the judge found "nothing in the record to show that [p]laintiff informed [d]efendants of an inability to . . . perform any essential functions of his job" and never requested an accommodation after his burn injury. The judge also dismissed the civil assault claim because plaintiff "had no apprehension or awareness" that Lazo was approaching him with a hot pan from behind.

The judge determined that plaintiff was an at-will employee as evidenced by an employment handbook provided to him. The handbook included a disclaimer that stated, "this handbook is not intended to be, nor does it constitute

an express or implied contract of any kind." Based on this unambiguous language, the judge dismissed plaintiff's breach of express and implied contract claims.

As an at-will employee, the judge concluded defendants acted legitimately in changing plaintiff's work hours. He failed to establish defendants acted with an ill motive or that his reasonable expectations as to hours assigned to him were "destroyed." The judge determined defendants were entitled to summary judgment on the implied covenant of good faith and fair dealing claim.

As to IBEW, the judge found plaintiff was ineligible to join the union because he was a part-time employee and never paid dues. The judge determined IBEW was entitled to summary judgment because there was no implied contract between plaintiff and IBEW and therefore, there could be no breach of the duty of good faith and fair dealing. After the oral argument, on the same date, orders were entered granting defendants' motions and dismissing plaintiff's complaint with prejudice.

Plaintiff moved for reconsideration. The judge found plaintiff sought to introduce new documents and re-litigate the summary judgment motions as to the workers' compensation retaliation claim only. In her statement of reasons, the judge determined:

Through this motion for reconsideration, [plaintiff] has sought to introduce new documents for the first time to re-litigate the original summary judgment motions. [Plaintiff's] motion solely addresses the workers['] compensation retaliation claim, and therefore reconsideration of the other claims have been waived.

However, these new facts would not change the ultimate outcome of the original motion. [Plaintiff] does not establish the second prong of the prima facie case for the workers['] compensation retaliation claim because he was not terminated from his position. [Plaintiff] did not suffer any changes to the terms and conditions of his employment due to his workers['] compensation claim, but rather had his schedule changed approximately five months later due to changes in student enrollment and elected to reject the new schedule and resign the position. This evaluation of the facts is unchanged even when considering the new evidence submitted by [plaintiff].

[Plaintiff] fails to argue that the [c]ourt erred in its consideration of the evidence and legal arguments, nor does he argue that any specific facts or arguments were overlooked in his opposition to the summary judgment motions. [Plaintiff] has not cited to any new case law or legal authority to support reconsideration of the September 14, 2018 [o]rder, but rather makes conclusory allegations that the alleged conduct by [d]efendants supports a claim for retaliation. Therefore, [plaintiff's] motion for reconsideration is [denied].

On appeal, plaintiff argues that the judge improperly dismissed his complaint summarily as to his claims for workers' compensation retaliation, CEPA violations, and assault. We conclude the motion judge properly

dismissed plaintiff's claims. She exhaustively reviewed and analyzed the record. Even the most generous of the allegations did not reveal any factual or legal basis entitling plaintiff relief against defendants. Thus, granting defendants' motions was warranted.

## II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must "be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

We then decide "whether the motion judge's application of the law was correct." Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 231 (App. Div. 2006). In doing so, we owe no deference to the motion judge's conclusions on issues of law. Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A. Workers' Compensation Retaliation Claim

We begin our analysis by noting that the Act prevents an employer from taking action against an employee who seeks benefits for work-related injuries. N.J.S.A. 34:15-39.1. In order to establish a prima facie case for retaliatory discharge for claiming workers' compensation benefits, a plaintiff must prove: "(1) that he made or attempted to make a claim for workers' compensation; and (2) that he was discharged in retaliation for making that claim" or "constructively discharged." Cerracchio v. Alden Leeds, Inc., 223 N.J. Super. 442-43 (App. Div. 1988).

In dismissing this aspect of plaintiff's complaint, the judge aptly noted it was plaintiff who

> made the decision to stop working. After [p]laintiff suffered the alleged injury in September [2015], and filed his worker's [compensation] claim, he actually saw an increase in hours due to increased staffing needs. Approximately five months later his schedule was changed again, along with other employees due to drops in student enrollment. Plaintiff elected to stop working over this new schedule, which was not outrageous or unconscionable. Nothing about the new schedule would be so intolerable that a reasonable person would be subject to resigning. Plaintiff's decision to stop working the new schedule constituted a voluntary resignation which bars a wrongful discharge claim . . . .

10

As determined by the motion judge, plaintiff failed to establish a causal link between his workers' compensation claim and any adverse employment action. We agree. Plaintiff began claiming workers' compensation benefits in September 2015 and left his position voluntarily in January 2016.

Moreover, the two Corrective Communications related to plaintiff's inappropriate conduct and do not give rise to a cognizable claim of retaliation. See Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002), appeal dismissed, 177 N.J. 217 (2003). No further action was taken against plaintiff by his former employer after the Corrective Communications were issued. Therefore, the judge properly granted summary judgment to defendants as to plaintiff's workers' compensation retaliation claim.

B.    CEPA Claim

Next, we turn to plaintiff's claim that he made a prima facie case under CEPA. "In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine." Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 397 (1994) (citing English v. Coll. of Med. & Dentistry, 73 N.J. 20, 23 (1977)). The only exceptions under state laws are when there is a claim that the employer has violated CEPA; the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to-2; the NJLAD,  or a contractual right

or an implied contract based on an employee manual pursuant to the holding in Wade v. Kessler Inst., 172 N.J. 327, 339 (2002).

The Supreme Court has noted that "CEPA codified the common-law cause of action, first recognized in Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980), which protects at-will employees who have been discharged in violation of a clear mandate of public policy." Higgins v. Pascack Valley Hosp., 158 N.J. 404, 417-18 (1999). "Thus, the CEPA establishes a statutory exception to the general rule that an employer may terminate an at-will employee with or without cause." Id. at 418 (citing Pierce, 84 N.J. at 65).

CEPA provides, in relevant part, that:

> [a]n employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation promulgated pursuant to law
> > . . . .
> >
> > (2) is fraudulent or criminal . . .
> >
> > . . . .

A-1761-18T2

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>
> (2) is fraudulent or criminal . . . ; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

"The purpose of CEPA . . . is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994).

To succeed on a CEPA claim, a plaintiff must prove four elements: (1) that the plaintiff reasonably believed that the employer's conduct violated a law, regulation or clear mandate of public policy; (2) the plaintiff performed "whistle-blowing activity" as defined in CEPA; (3) an adverse employment action has been taken against him or her; and (4) the whistle-blowing activity caused such adverse employment action. See Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999).

13

At base, CEPA covers employee complaints about activities the employee reasonably believes are: (i) in violation of specific statute or regulation; (ii) fraudulent or criminal; or (iii) incompatible with policies concerning public health, safety or welfare or the protection of the environment. See Estate of Roach v. TRW, Inc., 164 N.J. 598, 610 (1999). Importantly, "CEPA does not require that the activity complained of . . . be an actual violation of a law or regulation, only that the employee 'reasonably believes' that to be the case." Id. at 613.

Once a plaintiff has established a prima facie case under CEPA, courts employ the well-established burden-shifting analysis that is used in federal discrimination cases involving "pretext" claims. See Zappasodi v. Dept. of Corr., 335 N.J. Super. 83, 89 (App. Div. 2000); Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 92 (3d Cir. 1999). Under this test, "the burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its actions." Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Once the defendant articulates a legitimate reason for the adverse employment action, the presumption of retaliatory discharge created by the

prima facie case disappears and the burden shifts back to the plaintiff. See ibid.; Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 39 (App. Div. 2005). Then, "[t]o prevail at trial, the plaintiff must convince the factfinder 'both that the reason [given by the employer] was false, and that [retaliation] was the real reason.'" Woodson, 109 F.3d at 920 n.2 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

For summary judgment purposes, the judge must determine whether the plaintiff has offered sufficient evidence for a reasonable jury to find that the employer's proffered reason for the discharge was pretextual and that retaliation for the whistle-blowing was the real reason for the discharge. Klein, 377 N.J. Super. at 39; see Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995) ("[T]o defeat a summary judgment motion based on a defendant's proffer of a nondiscriminatory reason, a plaintiff who has made a prima facie showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence."). Typically, the types of evidence that the plaintiff must point to are "inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." Sempier, 45 F.3d at 731.

Because we agree with the motion judge's determination that plaintiff voluntarily resigned from his position and was not terminated, we need not address whether issues of fact exist as to the elements of a CEPA claim. However, we note the following.

Plaintiff alleges he engaged in CEPA-protected conduct by reporting the water filter issue to Moon. The record shows that Bloomfield College had a contract with a third-party vendor to maintain the water and soda dispensaries; therefore, Moon could have contacted them if needed. The judge correctly concluded that plaintiff did not engage in any CEPA-protected conduct. Plaintiff cites no authority that extends whistle-blower protection for undertaking the very duties of one's job. Therefore, summary judgment was properly granted to defendants as to plaintiff's CEPA claim.

### C.   Assault

Next, plaintiff contends the judge erred by granting summary judgment on his civil assault claim. An individual is liable for civil assault if (1) he or she acts with the intent either to cause harmful or offensive contact to another or to cause "an imminent apprehension" of such contact; and (2) "the other is thereby put in such imminent apprehension." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591 (2009).

16

Plaintiff argued he was intentionally burned by Lazo

> Because he sat the pan in the wrong sink, and he didn't say "Hot pan" or anything of that nature. And just a few days ago I reported him to [Moon], a few days earlier. . . . He was just talking, you know, and cursing and telling me that I left the door open and "close the door,["] you know, he was just yelling. And I told him, I said, "You know what?" I went and told [Moon]. I said, "[Moon], you got to go check him." And he didn't like the fact that I told [Moon] that he was doing what he was doing. And that's the only thing I can think of. I don't think it had anything to do with this. . . . I think he was mad because I told that he was talking crazy and I reported him to [Moon]. I don't think he liked it.

As the judge recognized, plaintiff's claim involved an alleged "simple assault." N.J.S.A. 2C:12-1(a) provides that a person is guilty of such an offense if he or she

> (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
>
> (2) Negligently causes bodily injury to another with a deadly weapon; or
>
> (3) Attempts by physical menace to put another in fear or imminent serious bodily injury.

Here, the judge considered the deposition testimony and found plaintiff failed to demonstrate any "imminent apprehension" because he admittedly had his back turned when Lazo held the hot pan and did not see him approaching. The pan was placed in a sink adjacent to where plaintiff was washing dishes and

A-1761-18T2

was not in Lazo's hand. The judge duly noted that plaintiff only provided speculation as to why he was burned by the hot pan and not uncontroverted facts. We have consistently held that conclusory and self-serving assertions are insufficient to overcome a summary judgment motion. Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999).

The judge appropriately determined that plaintiff failed to establish a prima facie case of assault. Moreover, the judge rightfully considered the context in which this incident took place. We are therefore satisfied that defendants were entitled to summary judgment on this claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1761-18T2