# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1932-22

RIVER EDGE POLICE
SERGEANT C.E.W.,

     Plaintiff-Appellant,

v.

BOROUGH OF RIVER EDGE,
RIVER EDGE POLICE DEPARTMENT,
REPD CHIEF OF POLICE THOMAS
CARIDDI, and REPD LIEUTENANT
MICHAEL WALKER,

     Defendants-Respondents.

_____

Argued October 16, 2024 – Decided August 5, 2025

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7917-18.

Eric V. Kleiner argued the cause for appellant.

Richard A. Grodeck argued the cause for respondents (Piro, Zinna, Cifelli, Paris & Genitempo, LLC, attorneys; Richard A. Grodeck, of counsel; Kristen Jones, on the brief).

PER CURIAM

Plaintiff C.E.W.[1] appeals from the February 2, 2023 Law Division order granting summary judgment dismissal of his age discrimination complaint against his former employers and supervisors, defendants the Borough of River Edge (BRE); the River Edge Police Department (REPD); the former chief of police, Chief Thomas Cariddi; and plaintiff's former supervisor, Lieutenant Michael Walker. When plaintiff did not receive a promotion to lieutenant, he filed a complaint alleging that defendants discriminated against him on the basis of age, in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. He further alleged that the ordinance governing the promotional process had a discriminatory impact on older candidates like himself and he had no choice but to resign due to disparate treatment and an intolerable work environment. Based on our review of the record and the applicable legal principles, we affirm.

I.

We glean these facts from the motion record, viewing them in the light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins.

_____

[1] We use initials to maintain the confidentiality of sealed records under Rule 1:38-11.

2

Co. of Am., 142 N.J. 520, 540 (1995). Plaintiff was hired by defendant BRE and defendant REPD as a police officer in 1992. Prior to his employment, he had earned a Bachelor of Science degree in accounting from Rutgers University. Sometime around 2001, plaintiff was assigned to the detective bureau, where he stayed until about 2013 or 2014. He was made acting sergeant in 2008 and promoted to sergeant in 2010.

In 2018, in addition to plaintiff, three other candidates applied for a promotion to lieutenant: (1) C.M.C.; (2) M.A.; and (3) C.C.[2] Under local ordinances that governed the promotion process, Ordinance Nos. 71-15 and 71-16, the BRE mayor and council selected candidates "by secret ballot of the governing body." Pursuant to the ordinances, the process was "based on merit." All candidates were required to take a "numerically scored written test," and the evaluation could include a "psychological assessment" and "oral examination." Further, the mayor and council were required to conduct a document review to "consider all candidate[s'] personnel files, evaluations, work product samples, writing samples and any other documents or outside testing results made available to them by the [c]hief of [p]olice." The ordinances also provided that

---

[2] Tragically, C.C. took his own life in 2021.

A-1932-22

the police chief would be present to "assist, offer opinions[ and] suggestions and make comments and recommendations" to the mayor and council.

According to Cariddi's responses to plaintiff's interrogatories, "[s]eniority is not routinely a component of the promotion process" but "can be used as a tie breaker if necessary when two candidates have almost identical records." In addition, although "years of service of a candidate was part of a totality of factors considered in the decision to promote[,] [s]eniority [was] not weighted." Cariddi also stated that "[n]o percentage was assigned to the interview process" or "the written test in the decision to promote."

For the 2018 lieutenant promotion process at issue in this appeal, candidates completed a written examination; received a peer review conducted by Cariddi and Walker whereby every officer anonymously reviewed the candidates; underwent an oral departmental evaluation with Cariddi and Walker; and participated in an in-person interview with the mayor, council, and business administrator, with Cariddi present.

Each of C.M.C.'s test scores exceeded plaintiff's. Plaintiff's mean peer evaluation score, scored out of 100 points, was 85.583, C.M.C.'s was 86.083, and C.C.'s was 83. On the written examination, also scored out of 100 points, plaintiff scored 95, C.M.C. scored 97, and C.C. scored 61. On March 26, 2018,

the council approved the promotion of then-Sergeant C.M.C. to lieutenant. C.M.C. was officially promoted to lieutenant on April 9, 2018. At the time, plaintiff was fifty-one years old, and C.M.C. was forty-seven years old.

Prior to the selection, Walker prepared a promotional evaluation in which he addressed each candidate's attitude, performance proficiency, and leadership qualities. Walker recommended C.C. as his first choice, plaintiff as his second choice, and C.M.C. as his third choice. He did not recommend M.A. for the position. In the evaluation, Walker described both C.M.C. and plaintiff favorably, noting that plaintiff's "abilities [outweighed] his faults" and C.M.C.'s "limited experience in the Detective Bureau and . . . Community Policing" justified him being ranked below plaintiff "in the promotional list for [l]ieutenant."

On the other hand, Cariddi recommended promoting C.M.C. over plaintiff. During his deposition, Cariddi testified that during the promotion process, he discussed internal affairs (IA) matters pertaining to C.M.C. with the council. Although the promotion process and accompanying evaluation did not reference disciplinary matters, Cariddi said that discussing IA matters "[was] absolutely standard." Notwithstanding the fact that C.M.C. had several IA and

A-1932-22

disciplinary matters on his record, ultimately, Cariddi had fewer reservations about promoting C.M.C. versus plaintiff.

Thomas Papaleo, the current mayor of the BRE who was on the council at the time of the 2018 promotional process, testified during his deposition that the council was not "obligated to take the recommendation of . . . the [police] lieutenant or . . . chief" regarding hiring decisions. Papaleo stated that in selecting a candidate for the promotion, he was looking for "professionalism" and "leadership qualities."

In his certification, plaintiff stated that he saw the name "Naprstek" written on the council's promotional documents. According to plaintiff, Naprstek was promoted to lieutenant and retired shortly after his new higher salary became pensionable, long before he was expected to retire and angering the governing body. Plaintiff believed that "writing [Naprstek] clearly reveal[ed] that the age of the candidates and the thought of how long the promoted candidate would stay in the REPD before retiring was on the minds of members of the voting body in assessing the candidates."

When plaintiff did not receive the promotion, he filed a two-count complaint on November 1, 2018, alleging age discrimination in violation of the LAD, N.J.S.A. 10:5-1 to -50. In count one, plaintiff alleged that he was "a

6

victim of disparate treatment and tangible job discrimination in the form of an unlawful denial of a job promotion to the position of lieutenant" (emphasis omitted). He asserted that his "credentials were comparable or equal to [C.M.C.'s] credentials" and in fact he "had superior qualifications to [those] of [C.M.C]." In count two, plaintiff alleged that by not considering "years of service, experience, seniority, or years of service at the next lowest position" in the promotional decision, the "ordinance[] was designed to allow for the promotions . . . of younger candidates rather than those similarly situated as plaintiff," resulting in disparate impact discrimination on candidates "in [plaintiff's] elderly age class." According to the complaint, defendants' motive to promote younger sergeants to the lieutenant position was to force retirements, reduce payroll, and allow for the promotion of "politically friendly officer[s]."

On June 9, 2021, plaintiff submitted a letter of resignation to Papaleo and Walker informing them that he planned to retire on August 1, 2021. He wrote that he chose to retire to spend more time with his family and thanked Papaleo and Walker "for bestowing [him] with the greatest honor of serving . . . for [thirty-two] years and three months as a police officer for the [BRE]." He added that he would "never forget the relationships [he] gained as part of the police force with [his] [brother] and [s]ister officers as well as Borough employees."

7

In his deposition, plaintiff confirmed that the day he retired, all on-duty and seventy off-duty officers were present. Plaintiff also acknowledged that he hugged most of the officers and hugged Walker twice that day. When asked what reason plaintiff gave Walker for deciding to retire, plaintiff said "[i]t was [his] time," to which Walker responded that he "was sorry to see [him] go." Plaintiff admitted that he expected Walker to try to talk him out of retiring and that if Walker had asked him to stay, he "absolutely would have" reconsidered his retirement.

Nonetheless, on August 2, 2021, plaintiff filed an amended complaint to add a constructive discharge count (count three). In the constructive discharge count, plaintiff alleged that "his workplace [was] intolerable" and he was "being forced to retire knowing defendants d[id] not want to make him [l]ieutenant due to his age and/or due to retaliation because he brought the original [discrimination] cause of action." According to the complaint, during 2021, Walker "ostracized" him and "marginalized" him in the police department to the point where "plaintiff's subordinates d[id] not recognize his authority on all occasions." Specifically, the complaint alleged that plaintiff had "been bypassed in communications regarding scheduling and assignments" that he was required to handle as a supervisor. The complaint also asserted that plaintiff "was

bypassed by the chain of command" in connection with "a color guard ceremony" to which he objected.

To support his constructive discharge claim, plaintiff testified in his deposition that he was "constantly attacked" at work, particularly by C.M.C. and Walker, and that he was "berated when [C.C.] took his own life." Plaintiff also testified that Walker mistreated him because he "purpose[ly] . . . wasn't put into a position of an acting lieutenant [when the chief retired in 2020] or [to] fill a position due to [his] litigation." Plaintiff testified further that he "continuously was [second-guessed], scrutinized, [and] circumvented." He believed that under the circumstances, he was never going to have another opportunity for a promotion to lieutenant, and he was a "dead man walking."

In a certification, plaintiff averred that on his last day of work, "[he] was very emotional but [he] acted like a professional and hugged [Walker]" because he "always tried to be professional." Similarly, regarding his June 9, 2021 resignation letter, plaintiff certified that he "acted professionally" because he was "planning on rejoining the workforce in the future in the private sector" and did not want a negative letter of resignation to be "considered a red flag" and limit his future job prospects.

After plaintiff retired, a new ordinance was adopted that changed the lieutenant selection process. Under the new ordinance, selection would be based on "merit, experience, education, demonstrated ability, competitive examinations and an interview." River Edge, N.J., Ordinance 71-15 (Sept. 21, 2020). Additionally, a new captain's position was created, which C.M.C. filled, thereby creating a vacancy for lieutenant. Further, following Cariddi's departure, another lieutenant spot became available. Although Cariddi left the REPD before plaintiff's retirement, the vacancy was not posted until after plaintiff retired.

Defendants moved for summary judgment on October 6, 2022. Plaintiff opposed the motion and cross-moved for leave to file an amended complaint to include a claim of fraudulent concealment.[3] Following oral argument on the motions, the judge issued an order and comprehensive oral opinion on February 2, 2023, granting defendants' motion in its entirety, dismissing plaintiff's

_____

[3] In his fraudulent concealment claim, plaintiff alleged that "Walker and Cariddi engaged in a coverup to conceal that the 2018 promotional process was a sham event." Specifically, according to plaintiff, "Walker and Cariddi destroyed/manipulated[ and/or] tampered with . . . [C.M.C.]'s IA and disciplinary files" to suppress and conceal "the fact that [C.M.C.] had a plethora of disciplinary and IA matters" from "the courts, . . . plaintiff, and ultimately a jury." Plaintiff alleged these files would have "reveal[ed] that the 2018 promotional process . . . was corrupted" and a "completely fraudulent process designed to favor the youngest candidate."

amended complaint with prejudice, and dismissing plaintiff's cross-motion as moot. In her oral opinion, the judge concluded that plaintiff did not establish a prima facie age discrimination claim because there was no evidence that plaintiff's age "was a motivating factor in the employment decision." Further, the judge determined that plaintiff did not demonstrate that "the neutral promotional policy" set forth in the ordinance "had a disparate impact on any employees." Lastly, the judge ruled that plaintiff failed to establish that he was subjected to such an "intolerable" work environment to meet the "stringent standard required to show that he was constructively discharged." This appeal followed.

On appeal, plaintiff argues the judge failed "to follow the summary judgment standard" and ignored "robust volumes of highly-reliable evidence revealing several clear indic[ia] of invidious age discrimination" and "constructive discharge." Plaintiff asserts he established a prima facie case of age discrimination and constructive discharge sufficient to withstand summary judgment and the judge erred in jettisoning his claims before the jury heard the facts of the case. Defendants counter that the judge conducted a thorough factual review of the evidence, applied the governing legal precedent, and properly found no competent evidence that the governing body considered age when it

11

made the promotional decision or that age had a determinative influence on the outcome. Defendants add that the judge properly concluded that "[p]laintiff could not establish that the municipal ordinance governing the . . . promotional process had a disparate impact which created a significantly discriminatory hiring pattern." According to defendants, because plaintiff failed to establish disparate treatment or impact under the LAD, and could not establish he was constructively discharged, his claims failed.

## II.

Our analysis begins with some established principles regarding our standard of review. "[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill, 142 N.J. at 540. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.

12

[Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations reformatted).]

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), overruled on other grounds by, Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558 (2012)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

Turning to the substantive principles pertinent to this appeal, the LAD makes it "an unlawful employment practice" or "unlawful discrimination" for

> an employer, because of the . . . age . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment . . . .

[N.J.S.A. 10:5-12(a).]

It is also unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. 10:5-12(e). Because "the overarching goal of [the] LAD [is] to eliminate the cancer of discrimination," Viscik v. Fowler Equip. Co., 173 N.J. 1, 13 (2002), "the LAD should be construed liberally to achieve its aims." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005).

Our courts utilize the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to evaluate LAD claims, requiring plaintiffs first to establish a prima facie discrimination claim. Viscik, 173 N.J. at 13-14. To establish a prima facie case, a plaintiff asserting a claim of discrimination based on a failure to promote must establish they: (1) are a member of a class protected by the LAD; (2) are "qualified for the position . . . sought"; (3) were "denied promotion"; and (4) "others with similar or lesser qualifications" were selected for the position. Chou v. Rutgers, State Univ., 283 N.J. Super. 524, 538 (App. Div. 1995); see also Pepe v. Rival Co., 85 F. Supp. 2d 349, 365 (D.N.J. 1999) (explaining that the fourth element of a prima facie

14

failure to promote claim includes a requirement that after the plaintiff's rejection, "the position was awarded to someone with equivalent or lesser qualifications who was sufficiently younger to create an inference of age discrimination"), aff'd sub nom., Pepe v. Rival Corp., 254 F.3d 1078 (3d Cir. 2001).

"The evidentiary burden at the prima facie stage is 'rather modest'" and "is to be evaluated solely on the basis of the evidence presented by the plaintiff, irrespective of defendants' efforts to dispute that evidence." Zive, 182 N.J. at 447-48 (italicization omitted) (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)). Indeed, "[t]he establishment of a prima facie case gives rise to a presumption of discrimination." Viscik, 173 N.J. at 14 (italicization omitted).

If a plaintiff demonstrates a prima facie claim, the burden of going forward, but not the burden of persuasion, "shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Ibid. If the employer articulates a legitimate reason for its action, "the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination." Ibid. To prove pretext, a plaintiff must show the

proffered reason was false, and "the employer was motivated by discriminatory intent." Ibid.

Stated differently, overcoming the pretext burden

> requires more of a plaintiff than simple identification of an act or event that the plaintiff believes bespeaks discrimination. As our Supreme Court has held, "[t]o prove pretext, . . . a plaintiff must do more than simply show that the employer's [proffered legitimate, non-discriminatory] reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent."
>
> [El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 173 (App. Div. 2005) (alterations in original) (quoting Viscik, 173 N.J. at 14).]

"If the employer is unable to proffer a nondiscriminatory reason, plaintiff is entitled to summary judgment . . . ." Marzano, 91 F.3d at 508. "[I]f the employer proffers a reason and the plaintiff can produce enough evidence to enable a reasonable factfinder to conclude that the proffered reason is false, plaintiff has earned the right to present his or her case to the jury." Ibid. However, a

> plaintiff does not qualify for a jury trial unless he or she can "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."

[Zive, 182 N.J. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).]

"Thus, under the McDonnell Douglas framework, a plaintiff retains the ultimate burden of persuasion at all times; only the burden of production shifts." Viscik, 173 N.J. at 14.

In LAD cases, a plaintiff may plead either a theory of disparate treatment or disparate impact. "[W]e acknowledge both [theories of relief] as cognizable under the LAD." Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 398 (2005) (citing Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 81-82 (1978)). Disparate treatment is established where "[t]he employer simply treats some people less favorably than others" because of their age, race, color, religion, sex, or national origin. Ibid. (quoting Peper, 77 N.J. at 81). "Proof of discriminatory motive is critical" to a disparate treatment claim. Peper, 77 N.J. at 81.

A disparate impact claim "involves employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive . . . is not required under a disparate impact theory." Id. at 81-82 (citation omitted) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)). "Rather, a plaintiff must show that a facially neutral policy 'resulted in a significantly disproportionate or adverse impact on

17                                                          A-1932-22

members of the affected class.'" Gerety, 184 N.J. at 399 (quoting United Prop.

Owners Ass'n of Belmar v. Borough of Belmar, 343 N.J. Super. 1, 47 (App. Div.

2001)).

We have previously stated that

> [t]he LAD "forbids the use of any employment criterion, even one neutral on its face and not intended to be discriminatory, if, in fact, the criterion causes discrimination as measured by the impact on a person or group entitled to equal opportunity." Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir. 1980), cert. denied, 449 U.S. 1113 (1981); see also Newark Branch, N.A.A.C.P. v. Town of Harrison, 940 F.2d 792, 798 (3d Cir. 1991) (stating "to establish a prima facie case of disparate impact discrimination, a plaintiff is required to demonstrate that application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern"). . . . "An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact." Massarsky v. Gen. Motors Corp., 706 F.2d 111, 121 (3d Cir.), cert. denied, 464 U.S. 937 (1983).
>
> [Schiavo v. Marina Dist. Dev. Co., 442 N.J. Super. 346, 369-70 (App. Div. 2015) (citations reformatted).]

"[A] constructive discharge claim under the LAD accrues when the

employee gives notice of . . . resignation or retirement." Shepherd v. Hunterdon

Dev. Ctr., 174 N.J. 1, 27 (2002). A constructive discharge claim bears "subtle

but discernable differences" from a hostile work environment claim. Id. at 28.

"The hostile work environment claim requires 'severe or pervasive' conduct that

18

objectively 'alters the conditions of employment' and is 'hostile or abusive.'"

Ibid. In contrast, a constructive discharge claim has a higher standard and requires "not merely 'severe or pervasive' conduct, but conduct that is so intolerable that a reasonable person would be forced to resign rather than continue to endure it." Ibid. (citing Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 428 (App. Div. 2001)). "More precisely, the standard envisions a 'sense of outrageous, coercive and unconscionable requirements'" that are "more egregious conduct than that sufficient for a hostile work environment claim." Ibid. (quoting Jones, 339 N.J. Super. at 428).

In Shepherd, our Supreme Court observed:

> Generally, a constructive discharge under the LAD occurs when an "employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Muench v. Twp. of Haddon, 255 N.J. Super. 288, 302 (App. Div. 1992) (quoting Goss v. Exxon Off. Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984)). In addition, specific considerations are relevant to a constructive discharge analysis. In particular,
>
>> an employee has the obligation to do what is necessary and reasonable in order to remain employed rather than simply quit. A trial court should consider the nature of the harassment, the closeness of the working relationship between the harasser and the victim, whether the employee resorted to internal grievance procedures,

19

the responsiveness of the employer to the employee's complaints, and all other relevant circumstances.

[Shepherd, 174 N.J. at 27-28 (alteration in original) (citation reformatted) (internal quotation marks omitted) (quoting Shepherd v. Hunterdon Dev. Ctr., 336 N.J. Super. 395, 420 (App. Div. 2001)), rev'd in part on other grounds, 174 N.J. 1 (2002).]

Applying these principles, we are satisfied the judge properly applied the summary judgment standard and reject plaintiff's assertion to the contrary. In her well-reasoned oral opinion, the judge recited the undisputed facts, delineated the governing legal principles, and, after applying the facts to the law, concluded that summary judgment dismissal of all three counts of the amended complaint was warranted.[4] Based on our de novo review of the record and the law, we agree with the judge's ruling and reasoning. There is simply no competent evidence in the record to support any of plaintiff's claims.

Specifically, as to count one, the judge correctly posited that "[t]he focal question" was "whether . . . [plaintiff's] age in any significant way made a

---

[4] Plaintiff's contention that the judge failed to "cite" the summary judgment standard is apparently based on the judge's comment that she would "not reiterate the summary judgment standard." However, based on the judge's analysis in its entirety, it is clear that she applied the Brill standard and did not "reiterate" it in her recitation of the legal principles simply for the sake of brevity.

difference in the treatment he was accorded by his employer."  "In a case alleging age discrimination under the LAD, an employee must 'show that the prohibited consideration[, age,] played a role in the [decision-making] process and that it had a determinative influence on the outcome of that process.'" Bergen Com. Bank v. Sisler, 157 N.J. 188, 207 (1999) (first alteration in original) (quoting Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 344 (App. Div. 1997)).

Here, the judge found that plaintiff could not establish disparate treatment age discrimination in the "absence of evidence that the governing body considered age at all when it made the promotional decision or that his age had a determinative influence on the . . . decision as to which candidate would receive the lieutenant position."  The judge explained:

> The only evidence in the record that the governing body was aware of the ages of the candidates is that their date[s] of birth[] are noted in the documentation in each promotion[] packet.
>
> There's no indication that there was ever any discussion or consideration of the fact that [C.M.C.], who was the successful candidate, was four years younger than plaintiff.

The judge added that "[t]he four-year difference" was "not sufficient in and of itself to raise an inference of illegal age discrimination as required to establish a prima facie failure to promote cause of action."

The judge also determined that even if plaintiff could establish a prima facie failure to promote claim, thereby shifting the burden of production back to defendants, "[d]efendants have set forth a number of nondiscriminatory reasons for their employment decision." The judge expounded:

> The governing body consistent with the ordinance, which establishes the promotional process, considered a number of factors in making their decision of which age was not one of them.
>
> The governing body was provided with the candidates' test scores. The governing body was provided with the candidates' peer evaluations. There were recommendations by . . . Walker. And the governing body was provided with the ranking of the four candidates.
>
> There were interviews of all the candidates by the governing body. And as testified by . . . Papaleo, a member of the governing body, he stated that he was looking for "professionalism" and for "leadership qualities."

In dismissing count one, the judge concluded that plaintiff failed to demonstrate that the legitimate nondiscriminatory reasons proffered by defendants for selecting C.M.C. for the promotion were false or amounted to

22

pretext. We are satisfied that count one was properly dismissed and affirm substantially for the reasons stated by the judge.

Plaintiff argues he satisfied the <u>McDonnell Douglass</u> burden-shifting standard because he "presented sufficient evidence to meaningfully throw into question [defendants'] proffered reasons" for promoting C.M.C. instead of him. To support his argument, plaintiff alleges that "Cariddi sabotaged [p]laintiff's promotion package"; "Cariddi and Walker exaggerated [p]laintiff's few minor blemishes as a police officer and maligned him in front of the voting body"; Walker's first pick for lieutenant, C.C., had lower test scores "and a series of mental and physical problems that led [C.C.] to take his own life in 2021"; C.M.C.'s prior IA disciplinary issues were hidden from the governing body; Cariddi wrote on plaintiff's "promotion[] documents that [p]laintiff had anger and fitness problems"; "elected officials equat[ed] [p]laintiff to another older officer named Naprstek who retired shortly after being promoted"; plaintiff and C.M.C.'s four-year age difference "is significant in a job that allows for a pension after only twenty years of service"; and open positions were not posted until plaintiff retired.

"[O]nce the moving party presents sufficient evidence in support of the [summary judgment] motion, the opposing party must 'demonstrate by

competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (last alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)). "'Competent opposition requires "competent evidential material" beyond mere "speculation" and "fanciful arguments."'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009)). As such, "conclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005); accord Hoffman, 404 N.J. Super. at 425-26.

Further, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence [submitted by the non-movant] is merely colorable[] or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). In addition, when the factual context renders a claim implausible, the nonmovant has a heavier burden of production in opposing a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

We are satisfied that even drawing all inferences in plaintiff's favor, he cannot satisfy the pretext prong of the McDonnell Douglass framework. Despite a voluminous record, plaintiff's argument relies entirely on colorable evidence and conclusory allegations. As the judge noted, "plaintiff does not point to any competent evidence in the record besides his conclusory accusations and his suspicions and his feelings from which a [factfinder] would conclude that . . . defendant[s'] actions were motivated by ageism." However, bare conclusions, "without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999) (quoting U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961)).[5]

Plaintiff's disparate impact claim alleged in count two of the amended complaint fares no better. In dismissing count two, the judge found that plaintiff failed to "demonstrate[] that the neutral promotional policy set forth in the River Edge ordinances had a disparate impact on any employees." The judge explained:

---

[5] To support his age discrimination claim, plaintiff relies heavily on what he characterizes as C.M.C.'s extensive IA and disciplinary history that was concealed from the governing body. However, such evidence is neither indicative of discriminatory intent nor animus on the basis of age.

Plaintiff . . . alleges that the River Edge ordinances, although neutral on their face, ha[ve] a disparate impact where no criteria utilized in the promotion[] decision involved years of service[], seniority, or years of service at the next lowest position, which in this case would be sergeant, in determining the promotion.

Plaintiff alleges that the methods utilized and scheme in deciding promotions and the established criteria through such ordinance[s] w[ere] designed to allow for the promotions of younger candidates rather than those similarly situated as plaintiff. Therefore, plaintiff alleges that the promotional process in place[] "has a disparate impact on the elderly sergeants that are nearing eligibility for retirement and are . . . over the age of [forty] years." . . .

Plaintiff also alleges that it is . . . defendant[s'] motive to promote less senior [or] younger sergeants to the lieutenant's position to reduce payroll and achieve new job openings for their loyal constituents.

This [c]ourt notes that both [C.M.C.] and [plaintiff] [were] both over the age of [forty] at the time of the promotion[] process. And in totality, plaintiff has proffered no evidence to support any of the above allegations set forth in . . . this count. There's no evidence that the ordinance[s] cause[d] a disparate impact. Plaintiff's argument that the ordinance[s] [a]ffected only him is insufficient to meet this burden.

We agree. Because plaintiff failed to show how the ordinance resulted in a discriminatory pattern or discriminatorily affected anyone besides him, his disparate impact cause of action fails. "An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact."

26

<u>Massarsky</u>, 706 F.2d at 121. As the judge noted, "[d]espite plaintiff's personal opinions as to what the voting body should have considered, the objective evidence demonstrates that the decision was not motivated by any discriminatory animus. Simply because the decision was not based upon factors plaintiff believed to be important, does not make the decision an unlawful one."

Likewise, plaintiff's argument that he was constructively discharged and forced to retire as alleged in count three of the amended complaint is unavailing. In rejecting plaintiff's constructive discharge claim, the judge recounted plaintiff's allegations that he was "stripped of his authority," "mistreated when he was assigned to be road supervisor during an honor guard ceremony," "second-guessed, scrutinized, and circumvented." The judge also referred to plaintiff's resignation letter, which "[spoke] of plaintiff's time as a member of the [REPD] in high regard" and made no "reference to his resignation occurring as a result of intolerable working conditions." In addition, the judge commented on plaintiff's interactions with Walker and his fellow officers on his last day as well as plaintiff's testimony that if Walker "had tried to convince him not to retire[,] he absolutely would have considered staying."

Based on the record in its entirety, the judge concluded that plaintiff did not establish that "[he] was subjected to an environment so intolerable that a

reasonable person would be forced to resign rather than continue to endure it." See Shepherd, 174 N.J. at 28. We agree. Plaintiff's allegations are insufficient to state a cause of action for constructive discharge. See Shepherd, 336 N.J. Super. at 416 (observing that "isolated incidents do not constitute discriminatory changes in the terms and conditions of one's employment"). Nor did plaintiff address "whether [he] resorted to internal grievance procedures[ or] the responsiveness of the employer to [his] complaints." Shepherd, 174 N.J. at 28 (quoting Shepherd, 336 N.J. Super. at 420). Accordingly, we are satisfied that summary judgment dismissal of plaintiff's amended complaint was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1932-22